### IN THE

# COURT OF APPEALS

## OF

# MARYLAND.

---

## COURT OF APPEALS, JUNE TERM, 1806.

### WINCHESTER, et al. vs. BROOKE.

APPEAL from a decree of the Court of Chancery. The bill, filed by the present appellee, stated that *Brooke*, the complainant, being possessed of and entitled to 80 shares of stock in the Bank of *Columbia*, and being desirous of disposing thereof, did, in May 1795, make application to *Solomon*, one of the defendants, who at that time acted as broker in *Baltimore*, to sell them for him. That *Solomon* informed *Brooke* he had a commission to purchase shares in the Bank of *Columbia* for a gentleman in *Philadelphia*, and that he would, and did purchase the shares of *Brooke*, for which *Solomon* agreed to give, and did give to him, his promissory notes for $2424, the one half payable in 26 days, and the other half payable in 28 days, and the shares were transferred by *Brooke* to *Solomon*. That *Solomon*, in 4 or 5 days after the date of the notes, became bankrupt, and on the 18th of May 1795, made and executed a deed of trust to *Winchester*, &c. the other defendants, of his effects and property, in trust, to be distributed among his creditors. That under and in virtue of the assignment, the assignees, *Winchester*, &c. lay claim to the 80 shares, (*Solomon* not having disposed thereof for a fair

*S. B. sold and transferred to E S, 80 shares of bank stock, and took his notes therefor. Two days thereafter E S. became insolvent, and transferred all his property to trustees for the benefit of his creditors. The trustees sold the stock, and received the proceeds. On a bill filed by S B against E S, and the trustees, claiming to be paid the notes out of the proceeds of the sale of the stock, in preference to the other creditors, it seems that he was not entitled to such preference*

*Where a preference is claimed by one of the creditors, it should appear by the proceedings, that there were other creditors whose claims are proved and allowed; also the amount of the estate and claims should appear, so as to shew the proportion which the creditor, claiming the preference, is entitled to, in case he had no right to a preference.*

VOL. II.  1

1806.

Winchester
vs
Brooke

and *valuable* consideration to any person whatever before his failure,) they alleging that the shares, or the nett proceeds thereof, must be applied equally among all the creditors of *Solomon;* although *Brooke* charges, that he hath an *equitable lien* on the shares, or the proceeds thereof, in preference to any other of the creditors of *Solomon,* the shares having been a fund created on the credit of the notes, and not having been since assigned *to a purchaser for a valuable consideration, without notice of such equitable lien.* That *Brooke* hath applied to the assignees, *Winchester,* &c. who refuse to pay him the amount of the shares, or the value thereof, alleging that *Brooke* hath not any preference to the other creditors. *Prayer,* that the defendants be compelled to pay to the complainant the said shares, or the value thereof, in preference of the other creditors of *Solomon,* and true and perfect answers make, &c. Also to account with and pay to the complainant the said shares, or the value and nett proceeds thereof, in satisfaction of the notes; and that the complainant may have such other remedy in the premises as the nature of his case doth or may require, &c.

The *answer* of *Winchester,* &c. so far as is material, stated, that when *Solomon* executed the deed of trust to them, he was insolvent, and owed large sums of money to several persons, far exceeding the value of all the property and effects which he was interested in, or had any title to. That these defendants had no notice, at the execution of the deed, that *Solomon* was indebted to the complainant, or any other person, for the 80 shares. That these defendants, all of whom are the creditors of *Solomon,* did, in July 1799, sell the shares for $1613. That they are willing to pay to the complainant his proportion of all monies which they received in virtue of the deed, and have always been willing to pay the same; but the complainant has refused to make any application therefor. They insist that the complainant has no lien, either equitable or legal, on the shares, or the money arising from the sales thereof, for the payment of the notes, as the shares were legally transferred to *Solomon,* and by him to these defendants. They say, that they have been informed by *Solomon,* and believe the fact to be, that *Solomon* purchased the shares on his account, and for his own benefit and use.

The *answer* of *Solomon* is similar to the preceding answer. That at the time he executed the deed of trust, he was indebted to a number of persons far exceeding the value of the property and effects to which he was entitled. That he did not inform the trustees, at the time he executed the deed, or at any time before, that he had not paid the complainant for the 80 shares. That after the execution of the deed he did not interfere in the administration of his effects, but the same, since that period, has been under the entire and exclusive control of the trustees. That on the 18th of May 1795, and after the execution of the deed, he was arrested at the suit of some of his creditors, and confined in gaol in *Baltimore;* and that on the succeeding day the certificate of the transfer of the 80 shares was received by the trustees. He positively denies he ever told the complainant that he had a commission to purchase shares in the Bank of *Columbia,* or in any other bank, for a gentleman in *Philadelphia,* or any other place whatever, or that he acted as a broker in making the contract with the complainant; but he expressly says, that he purchased the shares on his own account, and for his own use and benefit. That the complainant, about 18 months after the purchase of the shares, applied to this defendant to sign an instrument of writing, stating that he had purchased the shares on commission, which he refused to do.

*Testimony.* That the trustees of *Solomon* sold at auction 80 shares in the Bank of *Columbia,* to *John Munnickuysen,* on the 22d of July 1799, for $2480, which, after deducting duties and commission, amounted to $2413. That *Charles Lowndes,* in May or June 1799, requested *Munnickuysen* to purchase for him 80 shares in the Bank of *Columbia,* who purchased the same for him for 31 dollars a share, amounting to $2480. That the shares had been previously held by *Lowndes* in trust for the trustees of *Solomon.* That the dividends had been paid to the trustees. That after the sale to *Munnickuysen,* for the benefit of *Lowndes,* the shares were transferred to *Lowndes.* By the *Auditor's* statement, the defendants are charged with the nett amount of the sales of the 80 shares at auction,                      $2413 00

Also with dividends received, and interest thereon to the 22d of July 1799,             1184 14
_____

3597 14

1806.

Winchester
vs
Brooke

They were credited with 10 dollars paid on each of the shares, to complete the payments due to the bank on the shares; and also credited with the dividends and interest arising thereon as charged,       699 28

Balance due to complainant,       £2697 85

HANSON, Chancellor, (24th of March 1803,) being of opinion that the complainant was entitled to payment of two notes, given to him by the defendant, *Solomon*, on account of eighty shares of *Columbia* bank stock, transferred by the complainant to *Solomon*, out of the nett proceeds arising from the sale of the bank stock, so far as the same would extend, in preference to the other creditors of *Solomon*—*Decreed*, that the defendants, *Winchester*, &c. pay to the complainant the sum of $2697 85 cents, the same being the amount of the dividends and nett proceeds of three fourth parts of the sales of the eighty bank shares, according to the statement thereof made by the auditor of this court, together with interest, till paid, from the service of this decree. That the complainant and defendants sustain the costs by them respectively expended in the prosecution and defence of this suit.

The chancellor does not conceive that interest can be allowed, as proposed by the counsel, viz. from the 22d of July 1799 to the 24th of March 1803. If it were allowed it must either be charged to the trustees, or must come out of the estate of the insolvent, to the prejudice of other creditors. The latter would be surely unreasonable, when it does not appear that the trustees have received interest. From this decree the defendants, *Winchester*, &c. appealed to this court.

The cause was argued before CHASE, Ch. J. TILGHMAN, POLK, BUCHANAN, NICHOLSON and GANTT, J.

*Harper*, for the appellants, cited and relied on *Ellis vs. Huntt*, 3 *T. R.* 464. *Lickbarron vs. Mason*, 2 *T. R.* 63. *Barnes vs. Freeland*, 6 *T. R.* 80. *Green vs. Farmer*, 4 *Burr.* 2214. *Exparte Ockenden*, 1 *Atk.* 235. *Pollexfen vs. Moore*, 3 *Atk.* 273. *Walker vs. Preswick*, 2 *Ves.* 622. 2 *Roll. Ab.* 92, *pl.* 1, 2, 6. *Brennan vs. Current*, *Sayer's Rep.* 224. *Com. Dig.* tit. *Agreement*, (B. 3.) *Bond vs.*

*Kent,* 2 *Vern.* 281. *Fawell vs. Heelis, Ambl.* 724. *Grimes vs. French,* 2 *Atk.* 141; and *Walpole vs. Orford,* 3 *Ves.* 416.

*Shaaff,* for the appellee, referred to *Ridgely vs. Carey,* 4 *Harr. & M'Hen.* 167. He contended that the decree of the chancellor might be supported by the allegations and proof, independently of the principle of *lien,* as it did not appear that any person, but the complainant, had a right to the proceeds arising from the sale of the stock.

TILGHMAN, J. It is inconceivable how the chancellor could take the case up on the ground of preference.

THE COURT OF APPEALS were about to affirm the decree of the court of chancery, inasmuch as it did not appear by the record that there were any other creditors but the complainant, whose claims had been proved and were allowed; nor had the trustees set forth the amount of the estate of *Solomon,* and the amount of the claims against the estate, so as to show the proportion which the complainant was entitled to, in case he was not entitled to a preference; but the counsel for the appellants

DISMISSED THE APPEAL.